**In re Joseph Z. KORNICZKY, Lari L. Korniczky, Debtors.**

**Mark S. Wallach, Trustee, Plaintiff,**

**v.**

**Paul J. Korniczky, Defendant.**

**Bankruptcy No. 01–11645B.
Adversary No. 01–1349B.**

United States Bankruptcy Court,
W.D. New York.

April 20, 2004.

Penney, Maier & Wallach, Mark S. Wallach, of Counsel, Buffalo, NY, for Trustee.

Peter D. Grubea, Buffalo, NY, for Defendant.

**CARL L. BUCKI, Bankruptcy Judge.**

The chapter 7 trustee commenced this action to recover an allegedly preferential payment of proceeds from the sale of property that the debtor owned in common with his brothers and sister. This dispute presents several interesting issues of law, including the determination of the time of transfer for preference purposes and the rights of a joint tenant to recover the cost of property maintenance.

On June 7, 1996, Joseph Z. Korniczky borrowed $5,000 from his brother, Paul J. Korniczky, and promised to repay that amount with interest at a rate of five percent. Joseph eventually made several small payments totaling about $1,000, but was unable to discharge the obligation in full. Meanwhile, their grandmother conveyed a certain parcel of real estate on Fraser Road in Kiamesha Lake, New York, to Joseph, Paul, and three other siblings. This property contained three small cabins, and had been used by the family for recreational purposes. By agreement, Paul advanced the money needed to pay the taxes and utility costs, but was to receive reimbursement from his brothers and sister for their respective pro-rata shares of the expenses. Joseph, however, was financially unable to meet this commitment. Ultimately, Joseph agreed to convey his one-fifth interest in the Fraser Road property to Paul, in full satisfaction of all monies owed to his brother, both on account of the $5,000 loan and for expenses related to the property. To memorialize this understanding, Joseph and Paul signed an agreement on December 11, 1998. Although not notarized and never recorded, the agreement included the language that Joseph did "hereby transfer and assign" to Paul all of his "interest and ownership in the house on Fraser Road."

Paul Korniczky represents that after December 11, 1998, both he and his brother acted as if Joseph had conveyed his one-fifth interest. In particular, Paul no longer charged Joseph for any portion of the taxes or other expenses related to the property. In December of 2000, on behalf of himself and his siblings other than Joseph, Paul found a purchaser for the property. Rather than to record an instrument transferring Joseph's interest to himself, Paul instead procured from Joseph a Power of Attorney to execute all documents necessary to sell the Fraser Road property. Relying upon this Power as well as similar authorizations from the other siblings, Paul executed a deed conveying the Fraser Road property to an unrelated purchaser on March 16, 2001. Receiving a net consideration of $42,197.36, Paul retained two-fifths of this amount and distributed one-fifth to each of his siblings other than Joseph. Without Paul's prior knowledge, Joseph and his wife Lari then filed a joint petition for relief under chapter 7 of the Bankruptcy Code on March 23, 2001.

The trustee for Joseph and Lari Korniczky commenced the present adversary proceeding to recover from Paul J. Korniczky an allegedly preferential payment in the amount of $8,439.47. This sum represents one-fifth of the net proceeds from the sale of the Fraser Road property. In the trustee's view, Joseph Korniczky held a one-fifth interest in that property until its conveyance on March 16, 2001. The trustee contends, therefore, that Paul's retention of Joseph's share of the proceeds constitutes the payment of an antecedent debt within ninety days of Joseph's bankruptcy filing. Hence, the trustee seeks to recover that retained share as a preference under 11 U.S.C. § 547. Paul Korniczky responds that he received payment not on March 16, 2001, but upon the execution of the written agreement with his brother on December 11, 1998. In Paul's view, payment occurred long before even the insider preference period of one year prior to the filing of bankruptcy. Alternatively, Paul contends that any claim to proceeds is subject to offset for monies advanced on Joseph's behalf for taxes and maintenance charges.

Paul Korniczky correctly observes that under New York law, an unrecorded conveyance of real property is generally void only as against a duly recorded interest that is obtained in good faith and for a valuable consideration. Real Property Law § 291. As between grantor and grantee, however, a duly executed deed is effective even without a recording. *Wood v. Chapin*, 13 N.Y. 509, 514, (1856); *Buckley v. Chevron, Inc.*, 149 Misc.2d 476, 479, 565 N.Y.S.2d 419 (Sup.Ct.1991). The court takes note of the trustee's argument, that the brothers' settlement agreement cannot satisfy the requirements for a conveyance, particularly with its lack of a legal description of the premises. For purposes of the present decision, however, this court will accept Paul's contention that he acquired Joseph's interest in the real property upon execution of the settlement agreement in December of 1998. That, however, is not the standard for the occurrence of a transfer under section 547 of the Bankruptcy Code. Rather, subdivision (e) of that section establishes the applicable rule. Focusing upon the event of perfection, it states in part (2)(B) that a transfer is made "at the time such transfer is perfected, if such transfer is perfected" more than ten days after the transfer takes effect between the transferor and transferee. For the definition of perfection, we must look to part (1) of subdivision (e):

> For purposes of this section—(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected

when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; . . . .

In the present instance, Paul Korniczky never recorded any instrument of conveyance when he reached a settlement with his brother in 1998. Under New York law, therefore, a bona fide purchaser could still have acquired from Joseph an interest that was superior to that of Paul. Accordingly, the transfer of Joseph's interest was not perfected until March 2001, when the current owners recorded their deed from all five siblings. Because this event occurred within the preference period, the trustee may avoid Joseph's transfer of a property interest in satisfaction of obligations to Paul.

In the present context, the trustee may avoid only the transfer of the debtor's interest in the Fraser Road property. Paul Korniczky contends, however, that this interest is fully offset by his expenditures for taxes and maintenance. In response, the trustee argues that these advances created only an unsecured claim, to be paid pro-rata with all other allowed unsecured claims. Thus, the trustee would value his recoverable interest at $ 8,439.47, that being one-fifth of the net proceeds of sale in 2001.

■ A debtor's ownership of a one-fifth interest in real property does not necessarily establish an identical fractional interest in proceeds from that asset. Rather, New York courts have adopted the legal theory "that any item of rent received by a cotenant, in excess of his share of the income of the property, is an equitable charge against his interest and any expenditure made by a co-tenant, in excess of his share of the obligation, is a charge against the interests of his cotenants; the respective interests of the parties in the property are deemed to be reduced or increased accordingly." *Goergen v. Maar,* 2 A.D.2d 276, 278, 153 N.Y.S.2d 826 (Third Dept.1956). Under New York law, therefore, Joseph Korniczky transferred to his brother an interest whose value is not necessarily proportional to his percentage of ownership in the real property. In appropriate circumstances, a disproportionate assumption of related expenses may offset a co-owners entitlement to a pro-rata share of proceeds.

■ Pursuant to their settlement, Joseph and Paul agreed to effect a transfer of Joseph's property interest in satisfaction of both his unpaid contribution for taxes and the balance due on an outstanding loan. Even without the settlement, however, the tax contribution would have been a charge against Joseph's interest in the real estate. Because the settlement did not cause Paul to receive a greater satisfaction of his claim for tax reimbursement, the trustee cannot establish any preferential payment of that obligation. *See* 11 U.S.C. § 547(b)(5). On the other hand, the settlement does represent a preference with respect to the antecedent loan of $5,000. Not chargeable against any real estate interest of the debtor, this obligation was paid in full, thereby giving to Paul Korniczky a greater recovery than he would have received in chapter 7.

■ Paul Korniczky asserts that any claim of the trustee should be subject to offset for the pro-rata share of all real estate taxes paid through the final sale of the property in March of 2001. Although section 547 of the Bankruptcy Code has deemed the transfer of Joseph Korniczky's interest in the Fraser Road property to have occurred on that date, the 1998 settlement agreement is not without effect. By that contract, Paul took over all of

Joseph's rights to the property and forfeited any claim for reimbursement of future expenses. New York recognizes a general rule "that a tenant in common who has taken sole possession of jointly held property is responsible for the payment of the taxes thereon." *Gargano v. V.C. & J. Construction Corp.*, 148 A.D.2d 417, 420, 538 N.Y.S.2d 955 (2nd Dept.1989). In the present instance, Joseph transferred his property rights in consideration for the satisfaction of an outstanding note and of his brother's claim for reimbursement of the taxes due prior to December 1998. Subsequent taxes may have motivated the exchange, but they were not part of the consideration.

In the present context, this court need not decide the fair market value of the Fraser Road property in either December 1998 or March 2001. It suffices to note that under their settlement, the parties agreed that the fair value of Joseph's one-fifth interest was equivalent to the unpaid loan balance plus a pro-rata share of taxes paid but not reimbursed. In as much as the tax advances would have been a charge against the co-owners interest in any event, Paul's liability under section 547 is limited to the outstanding balance due on the loan that Joseph satisfied by reason of the settlement agreement. Because that agreement resolved all claims as of December 1998, the preference would include loan interest through the date of settlement.

By reason of the foregoing, this court will grant partial summary judgment to the trustee as to that portion of his claim that seeks to recover the outstanding loan balance as of December 11, 1998. On that amount, interest will be awarded at the federal rate from the trustee's demand for repayment. As to any further recovery, partial summary judgment is granted to the defendant. At this time, the record indicates that the loan's unpaid balance approximates $4,000 plus interest. Without a more precise calculation of the loan balance, this court will schedule a further evidentiary hearing to determine the exact amount that is due. In the interim, the parties are encouraged to work toward a stipulation of moneys owed. To the extent that they can so stipulate, this court will enter judgment for the agreed sum.

So ordered.